James D. Hopkins, J.
The plaintiffs are residents and owners of real property in the Town of Bedford, Westchester County, New York. They sue for a judgment declaring unreasonable and void an ordinance enacted by the town which reclassified three separately' owned parcels, aggregating 123 acres, from *862 a Residence 4-Acre (“ 4 A”) district to a Research Office (“RO”) district.
The parties joined as defendants are the Town of Bedford, the individual members of the Town Board, Hickrill Chemical Research Foundation, Inc. (hereinafter called “Hickrill”), Ruth W. Halsband (hereinafter called “ Halsband ”), The Harvey School (hereinafter called “Harvey”), and Reichhold Chemicals, Inc. (hereinafter called ‘ ‘ Hei.cbb.old ’ ’). The defendants Hickrill, Halsband and Harvey are the owners of the three parcels which are the subject of the challenged rezoning.[1] Reich-hold was the contract vendee of the parcel owned by Hickrill. The contract between Reichhold and Hickrill provided that it was contingent on the legally authorized use of the premises for the conduct of a research and development laboratory; the contract further provided that it expired on December 21, 1959, if the authority for the stated use had not been granted by that date.
The plaintiffs own and reside on property either adjoining or in the vicinity of the subject area, and their properties lie within either Residence 4-Acre (“4 A”) or Residence 2-Acre (“2 A”) districts.[2] They contend that the reclassification of the subject area by the town is invalid and unconstitutional, amounting to spot zoning, and representing an exercise of authority for the special benefit of the owners of the subject area, contrary to a comprehensive plan for the development of the town.
The Town of Bedford is located in the northeastern quadrant of the County of Westchester, and is about 38 miles from New York City.[3] It extends over nearly 40 square miles. The present population of the unincorporated area is 11,736;[4] in 1940 the population of the same area was 6,807, or an increase *863 in the 20-year period of 4,929. Its present zoning pattern originated in the enactment of an ordinance in 1946. The town is divided into 11 zoning districts and the residence district restricting use to not less than 4 acres (“4 A”) comprises nearly 80% of the total area of the town. About 1% of the town’s land is zoned for commercial and industrial uses. The land of the town is by a large margin vacant, and over 14,000 acres remain for development. Of the land in actual use, more than 56% is devoted to residential purposes, whereas commercial and industrial purposes account for about 3%.
The subject area is located near the community of Katonah, having frontage of approximately 3,000 feet on Boute 22 ( Jay St.). In the vicinity lie the Cross Biver Beservoir, a part of the watershed system of New York City, the home of John Jay, recently acquired by the State of New York as a historical site, and the clubhouse of the local American Legion Post improved with an outdoor swimming pool. To the south is Westfield State Farm, a State prison for the detention of women.
The subject area and the land surrounding it is generally rolling in character and largely vacant. The land owned by the plaintiff Corsi was rezoned from 4-acre to 2-acre residential use, and has been subdivided into lots for sale; it adjoins the subject area on the north. The remainder of the adjoining land is zoned for 4-acre residential use, although there are districts of 2-acre, 1-acre and half-acre residential classifications in the immediate vicinity. The plaintiff Gifford has subdivided property owned by him into 4-aere plots for sale; that property adjoins the subject area on the south.
Prior to the enactment of the zoning ordinance in 1946, the subject area was owned by Sylvan Weil and his wife, Buth N. Weil (now Halsband). Hickrill was established by the Weils as a membership corporation engaged in pure research in the field of organic chemistry. The subject area was zoned in Besidence 4 A district; and Hickrill sought and obtained from the Zoning Board of Appeals a special permit to construct a building “to be used as a research laboratory ” on the parcel of 18 acres conveyed to it by the Weils out of the area. The building was thereafter constructed and was used for that purpose until the Fall of 1959. Hickrill then offered the property for sale, and the contract of sale with Beichhold followed; the conditions of the contract requiring the grant of authority for the use by Beichhold as a researtih laboratory has been noted above.
*864 r Sylvan Weil died in 1952. In 1957, Harvey, a private school for boys for some 37 years, purchased 68 acres of the subject area. The buildings on the premises were converted to use for school purposes, and other buildings were erected.
Prior to 1956 the Planning Board had retained Frederick P. Clark and Associates as planning consultants. The Planning Board and Clark were theretofore engaged in drafting a revision of the 1946 zoning ordinance. In 1956 a proposed revision of the ordinance was produced and presented to the Town Board. That revision provided for an “O B ” district, permitting administrative offices and research laboratories under restrictions, among others, as to height of buildings, parking and access roads, and requiring a site of 100 acres. The Planning Board also recommended as one of three sites to be classified for such use an area substantially the same as the subject area. Except for minor amendments to the 1946 ordinance, the Town Board did not act on the proposed revision.
In August, 1959 the Town Board was informed by Frank Weil, the son of Mrs. Halsband and the late Sylvan Weil, of the interest of Reichhold in acquiring Hickrill’s property as a research laboratory. Thereafter the Town Board asked the Planning Board to recommend regulations for the creation of a district permitting administrative offices and research laboratories. The Planning Board, working with its planning consultant, submitted a recommendation. The Town Board on October 13, 1959 adoptetd an amendment to the 1946 zoning-ordinance, establishing a “ R O ” district; the amendment, save for minor changes, incorporated the recommendation of the Planning Board. The “ R 0 ” district required, inter alia, a minimum area of 18 acres, and imposed restrictions as to size and height of buildings in relation to the plot area, parking, number of employees, lighting and access roads.
On November 9,1959, in response to a request from the Town Board, the Planning Board recommended three sites as suitable for “ R O ” district uses. The subject area was one of these sites, and the Planning Board suggested as part of its recommendation that access to the subject area be required from Route 22. The Town Board then called a public hearing on December 8, 1959 on the proposal for the classification of the three recommended sites as “R 0” districts. At the public hearing considerable opposition to the rezoning of the subject area was voiced, as well as letters and petitions filed against the proposal; and on December 16 the Town Board.resolved not to rezone the subject area as proposed, and directed that it be given further consideration by the Planning Board as to area *865 and access. One of the other recommended sites was, however, rezoned to “ R O ” district use by the Town Board (an area in the vicinity of Bedford Village).
On January 8, 1960 Hickrill and llalsband filed a petition with the Town Board for the rezoning of their properties to a “RO” district use, and this petition was referred to the Planning Board, along with a request from the Town Board that the property owned by Harvey be included in the consideration of the petition. The Planning Board on January 28, 1960 recommended that the petition be denied without prejudice, for the reasons that access from Maple Avenue should be specifically prohibited by ordinance, rather than by the agreement of the petitioners, and that in a low-density residential area, a 50-acre minimum size plot should be an ordinance requirement; the report further stated that the Planning Board was submitting proposed revisions to the ordinance in accordance with the conclusions. On February 3, 1960 a public hearing on the Hickrill-Halsband petition was held, and again considerable opposition to the rezoning was manifested. Following the hearing, the Planning Board and Town Board discussed the proposed revisions to the “RO” district regulations, and reached an understanding as to the terms of the revisions.
The Town Board then resolved on March 8, 1960 to reclassify the subject area (i.e., the Hickrill, Halsband and Harvey properties) to £<R 0” district uses. Amendments to the “ R O” district regulations, embodying the revisions previously discussed, were adopted by the Town Board on March 31, 1960. The amendments changed the minimum size of a plot for “RO ” use from 10 acres to 25 acres, and directed that such a plot upon which more than 50 persons were employed must have access to a State or county highway.
The plaintiffs have made clear, both on the trial and in their brief, that they do not challenge the validity of the amendments of the zoning ordinance, either establishing the “RO” district (the Oct. 13, 1959 resolution), or making the regulations more restrictive (the March 31, 1960 resolution). Their claim rather assails the application of “ R O ” use to the subject area (the March 8, 1960 resolution). In pressing that claim, the plaintiffs have of course the burden of proof of their assertions that the reclassification of the subject area is invalid as spot zoning and not a proper exercise of the powers delegated by statute to the Town Board.
Indeed, the content of the burden of proof resting on a party charging the invalidity of a municipal zoning ordinance is sometimes framed in the terms of overcoming a presumption of *866 validity (Matter of Wulfsohn v. Burden, 241 N. Y. 288, 296-297; Church v. Town of Islip, 8 N Y 2d 254, 258; 1 Yokley, Zoning Law and Practice [2d ed.], § 37, p. 64; 8 McQuillin, Municipal Corporations [3d ed.], § 25.295, pp. 733-738).[5] The presumption is rebuttable (cf. Lincoln Bldg. Associates v. Barr, 1 N Y 2d 413., 415); nevertheless, the party attacking an ordinance must show that it is net justified by any reasonable interpretation of the facts (Shepard v. Village of Skaneateles, 300 N. Y. 115, 118). If the legislative classification of property for zoning purposes is fairly debatable, the legislative judgment controls (Matter of Presnell v. Leslie, 3 N Y 2d 384, 390), for the courts may not substitute "their decision so long as there can be discovered ‘ ‘ any state of facts either known or which could reasonably be assumed ” to buttress the legislative decision (United States v. Carolene Prods. Co., 304 U. S. 144, 154; Village of Euclid v. Ambler Realty Co., 272 U. S. 365; Zahn v. Board of Public Works, 274 U. S. 325; Town of Islip v. Summers Coal & Lbr. Co., 257 N. Y. 167). Doubtless these statements of the heavy burden placed on the assailant of an ordinance proceeds from a recognition of the explicit separation of powers between the legislative and judicial branches of the government (8 McQuillin, Municipal Corporations [3d ed.], § 25.278, pp. 677-683), as well as from the presumption of regularity attending official acts (Richardson, Evidence [8th ed.], § 71, p. 49).
It has been said that the invalidity of an ordinance must be demonstrated beyond a reasonable doubt (Wiggins v. Town of Somers, 4 N Y 2d 215, 218-219; Cohen v. City of Lynn, 333 Mass. 699), thus equating the burden of proof on the party challenging the ordinance to the burden on the State in a criminal case. There may be considerable question whether that result was intended,[6] and the court has considered the plaintiffs’ proof in this case in the light of the rules stated in the preceding paragraph.
The Bedford Town Board, in enacting the “ R O ” district amendment, unquestionably changed the basic policy of the 1946 *867 zoning ordinance to a degree in permitting business uses of a highly restricted and controlled type on acreage of relatively large size. The new policy thus formulated recognized the trend arising after World War II of business office and laboratory development in the metropolitan region around New York City.[7] The evidence at the trial indicated that 21 municipalities in Westchester County had adopted regulations permitting uses of the “ R O ” type on plots from 1% acres upward; of the 21 municipalities it was the opinion of a planning authority that the “ B O ” district of the Town of Bedford was the most restricted in the entire County of Westchester; and that there were but four which required as much as a minimum plot area of 25 acres.[8] Moreover, the validity of zoning for administrative offices and research laboratories has been affirmed by the court (Nappi v. La Guardia, 184 Misc. 775, affd. 269 App. Div. 693, affd. 295 N. Y. 652; Sieber v. Laawe, 33 N. J. Super. 115).
In fine, the plaintiffs’ complaint comes down to a difference of opinion between themselves and the town authorities as to the proper development of the subject area. Zoning is essentially a balancing of interests — the weighing of individual property rights and the enjoyment thereof, against the needs and interests of the public. To the plaintiffs the maintenance of their properties as they have enjoyed them is paramount; and they naturally desire that the maintenance of the uses allowably by the zoning ordinance in neighboring properties shall remain in the same status as their own. But the town authorities are obliged to view the conditions, both internal and external, from a broader horizon. The Town Board and Planning Board were accordingly within the legitimate sphere of legislative judgment to weigh the propriety and usefulness of rezoning the subject area as a site for “R O ” district development.
In forming the legislative judgment, the town officials were clearly justified in considering that (1) the use by Harvey of its property for educational purposes was closely allied to “ B 0” purposes; (2) the pre-existing laboratory use by Hickrill under special permit was for a purpose similar to *868 “R O ” purposes; (3) the subject area bordered on Route 22, a State highway, at a short distance from its junction with the Saw Mill River Parkway; (4) the State had established the home of John Jay as a museum in the near vicinity; (5) the subject area was within a short distance of Katonah, a settled community with railroad service; (6) there was some evidence that the prior estate quality of the surrounding land was in the process of disintegration, i.e., both the Corsi subdivision of 2-acre plots, and the Gifford subdivision of 4-acre plots had recently been launched; (7) the large quantity of residentially zoned land in the town was far in excess of land zoned for commercial purposes; (8) the tax rates, especially for school needs, had increased sharply in recent years.[9] A judgment based on these considerations may not be declared arbitrary or unreasonable ; and a court must always be cognizant that the reclassification of land for zoning purposes is peculiarly a local matter, in which local officials, by reason of their knowledge of local conditions and trends, are peculiarly equipped to act. In this case, too, the knowledge of the town officials was fortified by the advice of the Planning Board and the consultant to the Planning Board, in making the decision to rezone. That decision was the outcome of weighing the benefits to be gained against the detriments to be sustained.
The plaintiffs have in effect conceded the power of the Town Board to change the zoning policy of the town, but argue that the subject area was impervious to change. During the trial their attack was based partly on the claim that as the subject area had been reclassified from the use originally established by the 1946 ordinance, it was incumbent on the town authorities to demonstrate a change of conditions. The presumption of validity, however, attaches to an amendment of a zoning ordinance with the same force as to the original enactment (Levitt v. Village of Sands Point, 6 N Y 2d 269, 273; Rodgers v. Village of Tarrytown, 302 N. Y. 115, 121). The burden of proof, therefore, remained on the plaintiffs to demonstrate that the reclassification had no rational foundation, under the rules to which reference has already been made. They have attempted to meet that burden by recourse to the test of spot zoning pronounced in Rodgers v. Village of Tarrytown (302 N. Y. 115, 123, supra), where Judge Fuld said it was “ [D]efined as the process of *869 singling out a small parcel of land for a use classification from that of the surrounding area, for the benefit of the owner of such property and to the detriment of other owners
The subject area here, however, comprises 123 acres, and can hardly be termed “a small parcel of land”.[10] There is no evidence, moreover, that the town authorities were motivated by favoritism for the owners of the subject area, without a consideration of the welfare of the town at large. Indeed, the general area had been under consideration for “BO” type use since 1956, prior to the advent of Harvey. The potential sale to Reichhold in 1959 was the catalyst which superinduced the creation of “ R O ” districts; but the subject area was not rezoned at once (as was the site at Bedford Village), and received further consideration before it was approved. That the Hickrill and Halsband properties have evident ties of ownership, that the Harvey property was once owned by the Weils, or that Frank Weil is a member of the board of directors of Harvey, do not of themselves stigmatize the decision of the Town Board.
The plaintiffs further contend that the rezoning bears no relation to a comprehensive plan and does not serve the intertests of the public. In a sense, this argument is another aspect of the charge of spot zoning, for a comprehensive plan is the antithesis of spot zoning (Kutcher v. Town Planning Comm, of Town of Manchester, 138 Conn. 705; Zampieri v. Township of River Vale, 29 N. J. 599). The grant of power to enact zoning regulations by towns requires as a prerequisite that they be made in accordance with a compresensive plan and the general welfare (Town Law, §§ 261, 263). Nevertheless, it is the plain prerogative of the town authorities to make changes of zoning policy in order to adjust to changing patterns of living; they are not helpless to view the changing scene and not make provision for the present and future needs of Bedford (Rodgers v. Village of Tarrytown, 302 N. Y. 115, 121-122, supra; Greenberg v. City of New Rochelle, 206 Misc. 28, affd. 284 App. Div. 891; see, also, Partain v. City of Brooklyn, 73 Ohio Law Abstract 481, affd. 101 Ohio App. 279). To a high degree, the term “ comprehensive ” denotes a consideration of the general problem, and is synonymous with the result arising out of uniformity, in the application either of the ordinance itself or of policy (Haar, In Accordance with a Comprehensive Plan, 68 Harv. L. Rev. 1154,1167,1170).
*870 Here, the evidence is that the town authorities considered the problem, made a general classification of “ E 0 ” district available for all properties that fitted its requirements, and then after studies and recommendations of the Planning Board and its planning consultant, determined to apply “BO” use to the subject area. It cannot be said that this process represented “ a merely arbitrary fiat ”, condemned by the courts (Village of Euclid v. Ambler Realty Co., 272 U. S. 365, 389, supra). The wisdom or propriety of the rezoning cannot be a matter of judicial decision (Nappi v. La Guardia, 184 Misc. 775, 785, affd. 269 App. Div. 693, affd. 295 N. Y. 652, supra). The most that may be said for the plaintiffs’ contentions is that they make debatable the reclassification of the subject area; and that is insufficient to overturn the legislative judgment. So long as there exists rational grounds for the Town Board’s determination as to need, the congruity of surrounding uses, the physical, economic, and social causes and effects with respect to the reclassification, the courts cannot strike down the reclassification as arbitrary or unconstitutional.
The court has entertained some doubt as to the plaintiffs’ standing to contest the validity of the ordinance in suit. Little more testimony than that the rezoning of the subject area was detrimental to the plaintiffs’ properties was shown by them to prove the special damage required of a party challenging the constitutionality of the zoning reclassification of another’s land (cf. Buckley v. Fasbender, 281 App. Div. 985; Isen Contr. Co. v. Town of Oyster Bay, 279 App. Div. 1010; Hudson v. Town of Oyster Bay, 248 App. Div. 737; Brechner v. Village of Lake Success, 25 Misc 2d 920, 922, 923; Twenty-one White Plains Corp. v. Village of Hasting s-on-Hudson, 14 Misc 2d 800).[11] But in light of the importance of the issues, the court has disregarded any deficiency in the plaintiffs’ position, and has considered their contentions on the merits.
It follows that the complaint must be dismissed. This opinion may be treated as the decision of the court pursuant to section 440 of the Civil Practice Act.

. Of the total of 123 acres, Hickrill owns 18 acres, Halsband owns 37 acres and Harvey owns 68 acres.

. The plaintiff Thomas owns and resides on a parcel consisting of approximately 8 acres adjoining the subject area. The plaintiff Gifford owns a parcel of approximately 95 acres adjoining the subject area and resides about a mile and a half from the subject area. The plaintiff 151 East Post Rd., Inc., owns approximately 32% acres in the close proximity of the subject area; its principal stockholders reside about a mile and a half from the subject area. The plaintiff Sharp owns and resides on a parcel of approximately 150 acres about one third of a mile from the subject area. The plaintiff Cor si owns and resides on a parcel of approximately 32 acres adjoining the subject area.

. The statistical facts stated in this paragraph are taken from “ Town Development Plan (I960) ”, pp. 3, 9-13, prepared by Frederick P. Clark and Associates, and received in evidence as Exhibit 15.

. The Village of Mount Kisco lies partly within the Town of Bedford. The remainder of the town is unincorporated.

. Generally, a presumption simply dispenses with proof, and comes into play to aid a party in making out a prima facie case (c£. People v. Bichetti, 302 N. Y. 290, 298; 9 Wigmore, Evidence [3d ed.], § 2491, pp. 288-291). Here the defendant town does not have the burden of proof of establishing the validity of the ordinance. Nor did the municipalities in the cases cited above, and the rule stated seems rather one of substantive law than of procedure in offering proof.

. It has also been said that in a civil action the party bearing the burden of proof need only establish his ease by a fair preponderance of the evidence (McKeon v. Slych, 223 N. Y. 392, 397-398), with which view Wigmore is in accord (9 Wigmore, Evidence [3d ed.], § 2498, p. 327).

. The trend has been described and considered in authoritative legal and planning literature. (See Haar, Land-Use Planning, pp. 402-403, quoting from Meier, Planning for Tomorrow’s World; Reisman, Some Observations on Community Plans and Utopia, 57 Yale L. J. 173, 187, 189; Williams, Planning Law and Democratic Living, 20 Law & Contemp. Prob. 317, 323, 325; Perkins, The Regional City, and Woodbury, Industrial Location and Urban Redevelopment in Future of Cities and Urban Redevelopment, pp. 25-29; Coleman, Renewing Oar Cities, pp. 17-23.)

. Testimony of Hugh R. Pomeroy, Director of Planning, County of Westchester.

. The statistics are set forth in footnote 3 above. Clark stated in “ Town Development Plan (1960) ” (Exhibit 15), p. 59, that the general town tax rate had decreased over the period 1940-1960, but that highway, police and miscellaneous tax rates had increased nearly 400% and school tax rates about 600% during the same period.

. The authors of Note, Spot Zoning and the Comprehensive Plan (10 Syracuse L. Rev. 303, 305) examined 125 cases and found that the largest plot held to constitute an example of spot zoning was 13 acres. (For an inclusive study of the eases, see Ann., 51 A. L. R. 2d 263.)

. The plaintiffs produced a real estate expert who testified that the rezoning was detrimental to their properties; he had not, however, made any apprasials of the value of their respective parcels.