Richabd J. Cabdamone, J.
The petitioners move pursuant to CPLR article 78 for judgment annulling a determination made by respondent which upheld the issuance of a building permit for the construction of a shopping center.
The petitioners are 32 owners of real property in the Town of Manlius, Onondaga County, New York. The respondent is the Board of Appeals established under the Revised Zoning Ordinance of the Town of Manlius (hereafter called “Zoning Ordinance”). The Zoning Ordinance was adopted September 1, 1950. The ordinance was amended July 28,1965, so that certain premises comprising about 50 acres located at the northwest corner of North Burdick Street and East Genesee Street in Manlius, known as Andrea Acres, were changed from Residential (R-l & R-3) and a Restricted Agricultural District to a Residential Shopping District. The petitioners reside in close vicinity to Andrea Acres.
On November 4, 1965, a form labeled “Application for a Building Permit ” was filed with the Building Inspector of the Town of Manlius for the construction upon Andrea Acres of a shopping mall estimated to cost three million dollars by the Fayetteville Plaza Inc., as optionee of Andrea Acres. This application was subsequently approved by the Building Inspector. At the time of filing, the application was accompanied by maps, plans and specifications — the only definite occupancy indicated, however, was E. E. Edwards Department Store. An appeal from the Building Inspector’s approval of the application on November 5, 1965, was taken by the petitioners to the respondent Zoning Board of Appeals. Hearings were held commencing on December 20, 1965; continued on December 27, 1965, January 3, 1966 and January 13, 1966, at which time the respondent denied petitioners’ appeal and upheld the validity of the building inspector’s approval. The written decision was handed down in early March, 1966.
Following this determination by the respondent, this article 78 Proceeding was instituted by the petitioners.
The Zoning Ordinance provides: “ construction on any building hereafter erected shall not be commenced, nor shall vacant *22 land be occupied or used, in whole or in part, until a Certificate of Proposed Occupancy shall have been issued by the official designated by the Town Board and posted on the premises, certifying that such building, its location and its use, conforms to the provisions of this Ordinance (Zoning Ordinance, art. IX, § 26(a); emphasis supplied.)
Concededly, an application for a building permit filed November 4, 1965, was approved by the Building Inspector and a permit issued November 5,1965. No such procedure is provided for in the Zoning Ordinance. An ‘ ‘ Application for a Building Permit” and “Permit” are not mentioned in the ordinance. The intended use and occupancy indicated on the application was a shopping mall occupied by retail stores. The permit was issued by Building Inspector Hiller for the entire mall which consists of approximately 459,000 square feet of space without Mr. Hiller knowing what was going in, except for the E. E. Edwards Department Store, which comprised only 75,000 square feet. The cost of the project, one of the largest ever proposed in the metropolitan Syracuse area was to cost three million dollars as stated on the application, but was also estimated to cost as much as six million dollars, which was conceded to be a reasonable estimate. The certificate of proposed occupancy, the procedural method of commencing construction referred to in the Zoning Ordinance was not issued. In this connection, an affidavit was filed by the respondent’s attorney which indicates that no certificates of proposed occupancy have ever been issued by the Town Building Superintendent of Manlius — no blank certificate forms so labeled are available. However, 175 applications for building permits were filed in the year 1965 and 84 applications have been filed from January to May 30, 1966, of which 82 have been approved and permits issued thereon. He sets forth the practice which has been followed in the Town of Manlius. An applicant files his building application with the Town Clerk, together with accompanying documents (generally consisting of maps, plans and specifications), which are referred to the Town Building Superintendent who examines them and makes a determination as to whether or not a building permit may be issued. If he determines that such permit may properly be issued he approves the same and issues a permit; if not, he notes his disapproval on the face of the application with his reasons therefor. Following this, the permit itself is issued and is required to be posted on the premises where construction is to take place. During the course of construction, the Town Building Superintendent makes periodic inspection to insure compliance with the requirements of the *23 State Building Construction Code, the plumbing code and the Zoning Ordinance. Upon completion of construction and upon application of the holder of the building permit, the Town Superintendent makes a final inspection of the building and premises and if it conforms with the plans and specifications as set forth in the original application and meets all requirements of the applicable provisions of the law and the Zoning Ordinance, the Building Superintendent then issues a certificate of occupancy. Thus, in brief, there are three documents:
One, application for a building permit, which must be accompanied by plans and specifications. Two, permit, which must be posted on the premises where the construction is taking place. Three, certificate of occupancy, issued after the completion of the construction which permits the owner, lessee or tenant to take possession of the premises.
The affidavit of the attorney for the Town of Manlius further states that it has been the practice in the Town of Manlius to treat the first two of these instruments as a “ Certificate of Occupancy”, which is required under section 26 of article 9 of the Zoning Ordinance, and that such application for a building permit, together with the permit which is issued thereon, constitutes substantial compliance with the provisions of the Zoning Ordinance which relates to the issuance of certificates of proposed occupancy. The petitioners contend that there was insufficient information before the Building Inspector regarding the proposed use of the building to be constructed for him to issue any permit or certificate whatsoever.
The Zoning Ordinance in article IV, section 7 (f) entitled, ‘ ‘ Residential Shopping Districts” provides: “ The following structures and uses only shall be permitted in Residential Shopping Districts: Residential structures * * * grocery stores, meat markets, drug stores, retail stores, or stores of personal service with permitted residential quarters adjacent thereto ”. It further provides: ‘ the Town Board may impose such additional conditions * * * as the Town Board shall deem to be in the interest of public safety, welfare and convenience ”.
The Building Inspector had before him plans which showed a structure with proposed dimensions of a 570-foot front, 680-foot rear and 1,180-foot depth and the only use of which he had knowledge (E. E. Edwards) covered approximately 17% of the entire structure. This shopping center complex was concededly going to need the following to be successfully supported: 24 million in gross sales, 700 to 1,200 employees, 3,000 parking spaces, and 150,000 people shopping. The use to which over 80% of the structure was to be put was not before the Building *24 Inspector. Conceivably, even probably, would be the inclusion in this shopping center of restaurants, snack bars, banks, theatres and other uses not enumerated in article IV, section 7 (f), Residential Shopping Districts, as set forth in the Zoning Ordinance.
It is well-settled law that a court may not substitute its judgment for that of the administrative body it reviews unless the decision under review is arbitrary and unreasonable and constitutes an abuse of discretion. (Matter of Diocese of Rochester v. Planning Bd. of Town of Brighton, 1 N Y 2d 508, 520 [1956], citing Matter of Levy v. Board of Standards S Appeals, 267 N. Y. 347 [1935]; Matter of Peter Pan Playland, v. Foley, 13 A D 2d 546 ([2d Dept., 1961].) A wide discretion is granted to the board. The board may act upon its own knowledge of conditions and make its own survey. (People ex rel. Fordham Manor Ref. Church v. Walsh, 244 N. Y. 280 [1927].) The members of the board may use their own familiarity with the property in question, exercising an independent and informed judgment even to the extent of voting although not present at the hearing in question (Taub v. Pirnie, 3 N Y 2d 186 [1957]; Matter of Russo v. Stevens, 7 A D 2d 575, 578 [3d Dept., 1959]). The commission may act even without witnesses since it is presumed to be made up of citizens with qualifications to serve in that capacity. In that event, it must set forth in its decision the facts known to its members but not otherwise disclosed (Matter of Community Synagogue v. Bates, 1 N Y 2d 445, 454 [1956]). As Judge Caedozo stated: “ At all events, when there is evidence in the record, whatever inferences therefrom are proper will be presumed, in aid of the dispensing resolution * * * drawn by the Board ”. (People ex rel. Fordham Manor Ref. Church v. Walsh, supra, p. 287.)
While the determination of the board will not be disturbed unless it is arbitrary or capricious, and the burden of establishing such arbitrariness is imposed upon him who asserts it (Rodgers v. Village of Tarrytown, 302 N. Y. 115 [1951]), still the procedural requirements of the Zoning Ordinance must be strictly complied with since important property rights of citizens are affected. Ordinarily a certificate of occupancy is complementary to a building permit; the permit indicating that what the applicant proposes to do will be in conformity with the Zoning Ordinance; the certificate of occupancy certifies that what has actually been done meets those requirements. (2 Rathkopf, Law of Zoning & Planning [3d ed.], ch. 55, p. 55-20.) If petitioners permit the construction to proceed under administrative procedures not authorized by the Zoning Ordi *25 nance, appearing to object only when construction was complete and a certificate of occupancy (under present practice in Manlius) was applied for, they could be estopped. (Cf. Matter of Boardwalk & Seashore Corp. v. Murdock, 175 Misc. 208 [Sup. Ct., Queens County, 1940], affd. 261 App. Div. 913 [2d Dept., 1941], affd. 286 N. Y. 494 [1941].)
The issuing of permits is an administrative or ministerial act (Black v. Board of Appeals of Vil. of East Hills, 203 N. Y. S. 2d 6 [Sup. Ct., Nassau County, 1960]) and the official charged with the duty of issuing permits is bound by the provision of the ordinance pursuant to which he purports to act (Matter of Larkin Co. v. Schwab, 242 N. Y. 330 [1926]; Matter of Plander v. Koehler, 150 N. Y. S. 2d 879 [Sup. Ct., Nassau County, 1956]). To issue a permit not provided for in the Zoning Ordinance is beyond the power of the Building Inspector. Similarly, the unanimous determination of the Board of Appeals upholding the Building Inspector’s approval of the building application and the permit issued thereon is one beyond their power. Such action by the Building Inspector and the respondent Board of Appeals is a suspension of or amendment to the provisions of the Zoning Ordinance. Such actions are, therefore, of no legal effect. (Town of Greenburgh v. Buser, 285 App. Div. 1090 [2d Dept., 1955]; City of Yonkers v. Rentways, Inc., 304 N. Y. 499, 504-505 [1952].) Under the circumstances here, the determination of the Board of Appeals is an exercise of discretion beyond their power (Matter of Small v. Moss, 279 N. Y. 288 [1938]; Matter of Larkin Co. v. Schwab, supra).
To permit an unauthorized procedure to be followed would deprive petitioners here of important rights and would not be consonant with the court’s duty of construing statutes reasonably (Matter of Pansa v. Damiano, 14 N Y 2d 356 [1964]). Further, it is this court’s view that there was insufficient factual material furnished to the Building Inspector with regard to the “ use ” of the proposed structure for him to exercise his administrative discretion and make a determination as to whether the structure in question complied with the Zoning Ordinance or not. The record before the Zoning Board of Appeals did not cure this defect. Nowhere throughout hundreds of pages of testimony, is there any suggestion or elaboration of what uses are envisioned in the proposed complex except for the E. E. Edwards Department Store.
In brief, there is an improper procedure followed here and an inadequate record to review either by the Board of Appeals or iffe coqrt,
*26 Accordingly, this matter is remanded to the respondent so that proper procedures' may he initiated pursuant to the provisions of the Zoning Ordinance.
In the event that this matter is again before the respondent Board of Appeals, any hearings held should not duplicate those already had, hut should supplement them; nevertheless, any future determination of the board should be de novo on the basis of all of the proof adduced before them (Greenburgh Shopping Center v. Town of Greenburgh, 21 A D 2d 692 [2d Dept., 1964]).