DONALD C. ALBRIGHT et al., Respondents, *v.* TOWN OF MANLIUS et al., Appellants.

ELOISE SCHAFF, Respondent, *v.* TOWN OF MANLIUS et al., Appellants.

Fourth Department, June 30, 1970.

*Harris, Beach & Wilcox* (*James H. Hartman* of counsel), for Fayetteville Plaza, Inc., appellant.

*Ferdinand L. Picardi* for Town of Manlius, appellant.

*Oot, Greene, Setright & Moore* for Eloise Schaff, respondent.

*Bond, Schoeneck & King* (*James E. Wilbur* of counsel), for Donald C. Albright and another, respondents.

WITMER, J.  Respondents, 148 neighboring property owners in the "Albright" action and one neighboring owner in the "Schaff" action, instituted the actions to declare invalid and void two ordinances enacted by the Town Board of Manlius on January 21, 1967, amending the general zoning ordinance of the Town.  Respondents further requested a judgment permanently restraining defendants-appellants, Town of Manlius and Fayetteville Plaza, Inc., hereinafter referred to as the Town and Plaza, respectively, from taking any action under said amendments.

The first amendment created a new zoning classification in the Town designated "Regional Shopping Districts" and changed the zoning classification of a 50-acre tract, known as Andrea Acres and owned by the Plaza, from Residential Shopping District to Regional Shopping District.  The second amendment established "conditions" upon the proposed use of said Andrea Acres as rezoned.  The "conditions" imposed by the amendment relate to setback, side yard and buffer areas, paving, entrances, signs, parking, landscaping, etc.  Respondents contend that the first amendment is invalid because it was not enacted in accordance with a comprehensive plan for the Town as required by law (Town Law, § 263; *Udell* v. *Haas*, 21 N Y 2d 463, 469–471).  They also contend that the second amendment which imposed "conditions" on the development of

Andrea Acres, in fact constitutes establishment of zoning " regulations " and, as such, is invalid because notice and a public hearing, as required by section 264 of the Town Law were not given. Agreeing with respondents in both respects, the Trial Justice granted judgment declaring the first amendment invalid and void because it was not enacted in accordance with a comprehensive plan and the second amendment invalid and void because it was enacted without the required public notice and hearing; and defendants-appellants were enjoined from acting under said amendments. The defendants appeal from such judgment.

The first question presented is whether the first amendment was enacted in accordance with a comprehensive plan. Decision of that question requires an examination of the activities of the Town since the original enactment of its zoning ordinance in 1950, with respect to amendments thereof.

Andrea Acres, the 50-acre site in question, is located on the north side of East Genesee Street, also known as State Route No. 5, a main, through-traffic artery, a short distance west of the Village of Fayetteville in the Town of Manlius. The Town lies east of the City of Syracuse and next east of the Town of Dewitt which intervenes the City and the Town of Manlius. Manlius is mostly rural and residential, and there are some fine residences in subdivisions west, south and east of the subject area. Andrea Acres consists of vacant, low-lying land, traversed from southwest to northeast by a brook which is a tributary of Limestone Creek, and seasonally the area is flooded in its northern section. The lands on its west, south and east are considerably elevated and unaffected by such flooding. The physical features of this property and its relation to the adjoining properties were apparently very important considerations in the action taken by the Town herein.

In 1957, seven years after the original enactment of the Town's zoning ordinance, application was made to rezone Andrea Acres for commercial use, and this was denied by the Town Board. In the early 1960's the Town Board came to believe that the original 1950 zoning ordinance was becoming outdated and undertook various studies to update and amend it in accordance with developing needs. One avowed objective of the board was the attraction of commercial development. In furtherance of its objectives the board retained the expert planning assistance of Planners Collaborative; actual and proposed land use and related zoning maps were prepared, as well as physical characteristics maps of the Town; a comprehensive " outdoor recrea-

tion study " was made, and topographical surveys, population studies, present and expected, and water and sewer studies were made, and proposed master zoning plans were assembled.

In 1965 another application was made to rezone Andrea Acres to " Commercial A ". The Town Planning Board modified the proposal to " Residential Shopping District " in an effort to restrict a number of the undesirable uses permitted under a " Commercial A " classification. As modified, the zoning change was adopted by the Town Board; but upon procedural grounds it was nullified by the Supreme Court (*Beneke* v. *Board of Appeals of Town of Manlius,* 51 Misc 2d 20).

In October, 1966 the Town Planning Board submitted a new proposed general zoning ordinance for the Town, in which Andrea Acres was to be rezoned partly " Commercial B " and partly " Conservation." After public hearing thereon in November the Town Board on December 14, 1966 by resolution rejected this proposed general ordinance and returned it to the Planning Board for further study. In its same resolution of that date, however, the Town Board scheduled a public hearing for January 4, 1967 to consider amending the original 1950 zoning ordinance to create a new general district entitled " Regional Shopping Districts ", in which Andrea Acres would be so classified. The public hearing was held, and on January 21, 1967 the Town Board unanimously voted to amend the 1950 zoning ordinance to establish Regional Shopping Districts, and it reclassified Andrea Acres to such district. It appears that a regional shopping district is much larger in store composition and customer attraction than a residential shopping district. As before stated, respondents contend that this amending ordinance was not enacted in accordance with a comprehensive plan and is, therefore, invalid.

In considering this issue, we start with the principle that the amendment, as a legislative enactment, is entitled to the strongest possible presumption of validity. A legislative body, in this case the Town Board, is on the scene, knows the needs and wishes of the people and is charged by the electorate with the responsibility for legislating and conducting governmental affairs of the community in accordance with the best interests thereof; and the courts may not lightly overrule its legislative acts (*Thomas* v. *Town of Bedford,* 11 N Y 2d 428, 433–434; *Church* v. *Town of Islip,* 8 N Y 2d 254, 258; *Levitt* v. *Incorporated Vil. of Sands Point,* 6 N Y 2d 269; *Rodgers* v. *Village of Tarrytown,* 302 N. Y. 115, 121; *Shepard* v. *Village of Skaneateles,* 300 N. Y. 115, 118). Nevertheless, such an enactment will not be upheld if it does not meet the basic requirement that it

be made in accordance with a "comprehensive plan". "No New York case has defined the term 'comprehensive plan'. Nor have our courts equated the term with any particular document" (*Udell* v. *Haas*, 21 N Y 2d 463, 471, *supra*). What a comprehensive plan is not, however, has been considered by many authorities and courts in an effort to understand and clarify the term (see *Place* v. *Hack*, 34 Misc 2d 777, 780). While consistency and rationality in the enactment of the ordinance are important elements, "the 'comprehensive plan' requires that the rezoning should not conflict with the fundamental land use policies and development plans of the community (see *Santmyers* v. *Town of Oyster Bay*, 10 Misc 2d 614, 616; *Linn* v. *Town of Hempstead*, 10 Misc 2d 774; *Place* v. *Hack*, 34 Misc 2d 777; *Walus* v. *Millington*, 49 Misc 2d 104 [affd. on opn. of trial court *sub nom. Walus* v. *Gordon Realty Corp.*, 31 A D 2d 777]). These policies may be garnered from any available source, most especially the master plan of the community, if any has been adopted, the zoning law itself and the zoning map" (*Udell* v. *Haas*, 21 N Y 2d 463, 472, *supra*). Apart from the prerequisite statutory formalities, no particular procedure is required to enact an acceptable zoning ordinance. Where there is a planning board (cf. *Place* v. *Hack*, *supra*, p. 779), the ordinance need not be adopted in accordance with the recommendations of such board (*Church* v. *Town of Islip*, 8 N Y 2d 254, 256–257, *supra*), nor must the requisite "comprehensive plan" be in writing (*Jackson & Perkins Co.* v. *Martin*, 16 A D 2d 1, 4, revd. on other grounds 12 N Y 2d 1082; *Place* v. *Hack*, *supra*, p. 780; Note, 10 Syracuse L. Rev., 303, 304). "Comprehensive Plan" connotes, however, a full consideration of the problems presented and reasonable and uniform provisions to deal with them, which tend to promote the general community welfare (see *Thomas* v. *Town of Bedford*, 29 Misc 2d 861, affd. 15 A D 2d 573, affd. 11 N Y 2d 428; *Soule* v. *Town of Perinton*, 152 N. Y. S. 2d 734, app. dsmd. 2 A D 2d 834; Haar's Zoning According to Plan, 68 Harv. L. Rev., 1154, 1170–1173; and Comprehensive Plan Requirement in Zoning, 12 Syracuse L. Rev., 342, 347). Where, therefore, the evidence has established that the Town Board gave full consideration to the problem, the ordinance has been upheld (*Thomas* v. *Town of Bedford*, *supra*; *Soule* v. *Town of Perinton*, *supra*; *Place* v. *Hack*, *supra*).

A relevant inquiry in a case such as the one at bar is whether the amendment was enacted for the benefit of an individual owner, sometimes referred to as "spot zoning", rather than for the general welfare of the community (*Rodgers* v. *Village of Tarrytown*, 302 N. Y. 115, 123–124; *Mazzara* v. *Town of Pitts-*

*ford,* 34 A D 2d 90; Anderson, Zoning Law and Practice in New York State (1963), §§ 5.02–5.03). The size of Andrea Acres, approximately 50 acres, militates against any charge that this amendment constitutes spot zoning (see *Place* v. *Hack,* 34 Misc 2d 777, 779–780 and cases cited therein; Anderson, Zoning Law and Practice in New York State, § 5.04).

The history of this amendment as contained in the record shows that whereas the Town was essentially rural and residential in nature when its general zoning ordinance was originally adopted in 1950, during the next 15 years the Town's officials began to believe that there was a need for more commercial development to increase the tax base and to serve a growing residential community. This led them to initiate the broad studies and preliminary planning for zoning change above mentioned, to enact the amendment of 1965 which was nullified on procedural grounds, and led to the submission of a proposed general zoning ordinance in October, 1966 which the Town Board rejected and sent back to the Planning Board for further study. But in the very resolution returning this ordinance to the Planning Board for further study the Town Board scheduled a public hearing for January 4, 1967 to consider amending the 1950 zoning ordinance to create a new type of district entitled Regional Shopping District and to reclassify Andrea Acres into such district. It thus appears that the efforts which began publicly in 1957 to rezone Andrea Acres to some commercial use and the various proposals which had, in one form or another, for years been considered and reconsidered by the Planning Board and the Town Board, continued prominently in the thinking of the Town Board. The original ordinance and the studies by the experts, Planners Collaborative, together with the various acts of the Planning Board and Town Board comprise at least the minimum informal comprehensive plan required (see *Udell* v. *Haas,* 21 N Y 2d 463, 472, *supra,* and *Matter of Gilmer* v. *Fritz,* 28 A D 2d 804, 805). Since the proposed new general zoning ordinance was being deferred for further study, apparently the Town Board determined that at long last it was time to rezone Andrea Acres in a manner somewhat modified from the various proposals which had been made with reference to it over the previous 10-year period. In short, the Town Board decided to adopt in modified form a part of the new proposed zoning plan, with the remainder returned for further study. This it had authority to do (see Haar, Zoning According to Plan, 68 Harv. L. Rev., 1154, 1158–1167; and see *Thomas* v. *Town of Bedford,* 11 N Y 2d 428, 433–434). The creation of the new Regional Shopping District was a compromise between the lim-

ited Residential Shopping District and the Planning Board's proposed Commercial "A" District. It was the culmination of four years of intensive study and work toward establishing a proper zoning designation for the area which would permit maximum effective use of the land and increased commercial development while still limiting undesired uses so as to cause the least disturbance of and the greatest harmony with adjacent residential districts. This procedure seems consistent with action in accordance with a comprehensive "well-considered" and carefully developed plan.

Further evidence that the Town Board acted after careful consideration of the problems involved and consistently with an informal comprehensive plan lies in the fact that at the same meeting at which this first amendment was enacted the Board also enacted the second amendment imposing carefully prepared "conditions" upon the use of Andrea Acres as a Regional Shopping District. Most of these conditions were derived from the Onondaga County Planning Department — certainly an appropriate source for the Town in that county. It shows that the board did not act in haste; that it acted for the benefit of the community as a whole to establish limited commercial development in the Town with suitable protection to the surrounding properties (see *Udell* v. *Haas, supra*, p. 470). We conclude, therefore, that the first amendment was enacted in accordance with a comprehensive plan.

We turn to consideration of the validity of the second amendment in which the Town Board imposed certain "conditions" upon the development of Andrea Acres as a Regional Shopping District. Although those conditions were imposed for the protection of neighboring owners, including respondents, the latter contend that the amendment is invalid because the so-called "conditions" are in fact regulations which could not be established without a hearing, and that the amendment was enacted without public notice and public hearing as required by law. Had such notice been given and hearing held with respect to such "conditions", respondents would have had notice of the need to urge even more stringent "conditions".

The Town Law (§ 261) authorizes a town to regulate the height and size of buildings, the percentage of a lot which may be occupied by buildings, the size of yards, open spaces, etc. It authorizes (§ 262) a town board to divide a town into districts within which specified regulations must be observed, which regulations (§ 263) shall be made in accordance with a comprehensive plan. Section 264 of the Town Law provides, in pertinent part: "However, no such regulations, restrictions, or

boundary shall become effective until after a public hearing in relation thereto, at which the parties in interest and citizens shall have an opportunity to be heard. At least ten days' notice of the time and place of such hearing shall be published ''.

The '' conditions '' imposed in the second amendment, regulating use of Andrea Acres in the new Regional Shopping District, relate to setbacks, buffer areas, signs, paving, entrances, landscaping, parking, etc. concerning location and use of the land and buildings, and fall directly within the provisions of section 261 of the Town Law relative to regulation of such matters. Thus, under section 264 of that law the amendment, though within the scope of the Town Board's powers, could not be enacted until after a public hearing was held upon at least 10 days' notice.

Due notice of hearing was given with respect to the first amendment, and no such objection is made as to it. In the notice for the meeting to consider the first amendment it was stated that '' the Town Board, prior to the issuance of a Building Permit, may impose such reasonable conditions as to cause the least disturbance of and the greatest harmony with adjoining or adjacent residential districts, or which the Town Board shall deem to be in the interest of public safety, welfare and convenience.'' That notice was insufficient to inform the public that an amendment in the nature of the second enactment was to be acted upon, and it failed to give adequate notice of the character of the conditions or regulations intended.

The second amendment was thus enacted without the required notice and hearing, and it is, therefore, invalid (see *Keeney* v. *Village of LeRoy,* 22 A D 2d 159). The Trial Justice properly ruled that respondents have status to present this objection to the second amendment.

We hold, therefore, that the judgment should be modified by reversing that portion which declares the first amendment invalid and void and enjoins the appellants from acting under it, and in lieu thereof such amendment should be declared valid; and that insofar as the judgment declares the second amendment invalid and void and enjoins the appellants from acting under it, it should be affirmed.

GOLDMAN, P. J., GABRIELLI, BASTOW and HENRY, JJ., concur.

Judgment unanimously modified on the law and facts in accordance with the opinion herein, and as so modified affirmed, without costs to any party.