PETER J. MCDONOUGH et al., Constituting the Village Board of the Village of Fairport, Respondents, v VINCENT P. APTON et al., Appellants.

Fourth Department, May 30, 1975

*Johnson, Reif & Mullan, P.C. (George A. Schell* of counsel), for appellants.

*Easton, Bitker & Wolf (George T. Wolf* of counsel), for respondents.

MOULE, J.P. The primary issue presented on this appeal concerns the validity of a zoning ordinance which prohibits the display of goods for sale in yard areas and the use of a building located within an industrial zone for residential purposes.

Respondents Apton have resided at 62 North Main Street in the Village of Fairport since November, 1968 as tenants and since September 25, 1970 as owners. They also have operated a wholesale and retail antique business on the premises. Respondent Kiefer holds the mortgage. Under a village zoning ordinance adopted on November 28, 1966 and a similar successor ordinance adopted on August 14, 1972, the area on which

the Aptons' building was located was designated as an M-1 industrial district. These ordinances prohibited residential use of property within the district and the outdoor display of goods for sale along public streets within established setback boundaries. On corner lots, such as respondents', the setback lines were established at 30 feet for the front yard, 25 feet for the street side yard and 15 feet for the interior side yard.

The Village of Fairport commenced a special proceeding seeking a permanent injunction prohibiting respondents from violating the zoning ordinances. As part of its direct case the village introduced into evidence a number of photographs showing respondents' yard cluttered with the type of merchandise generally sold at their North Main Street location. There was a wide variety of items pictured including furniture, benches, wooden barrels, wagon wheels, a used station wagon and a 16-foot high mock-up beer bottle. Respondents contended, however, that the photographs were taken shortly after a shipment of goods was received and that the items pictured either were to be brought into the store or were personal property, not offered for sale, and that the beer bottle was an advertising display. Respondents also argued that the village discriminated against them in the enforcement of its ordinances and introduced evidence to show that other antique dealers on Main Street displayed merchandise in their yards.

No evidence was introduced by the village that respondents resided upon the premises in violation of the zoning regulations since respondents admitted their residence. With regard to this point, respondents produced evidence that a majority of the land area in the M-1 zone was used for residential purposes. They also contended that the village should have granted them a special permit to reside above their store and that its failure to do so was also discriminatory. Evidence was introduced to show that another merchant was granted a permit to construct an apartment above a marina. The trial court found that respondents were violating both prohibitions of the ordinance and a permanent injunction was issued.

Consequently, we have for consideration, first, whether the village presented a prima facie case that respondents were displaying merchandise for sale in their yard in violation of zoning regulations; second, whether the village enforced the setback ordinance in a discriminatory manner; third, whether the setback ordinance was constitutional and, fourth, whether

the village's prohibition of residential uses in an industrial zone was within permissible constitutional limitations.

Section 55-16 (g) of the Zoning Ordinance of the Village of · Fairport provides "business structures or uses shall not display goods for sale purposes * * * in any location which would infringe upon the required yard areas specified in this ordinance." The photographs introduced as evidence presented ample prima facie proof upon which the court could determine that respondents had displayed goods for sale in their yard. Respondents admitted that the merchandise pictured was of the type offered for sale at their premises and the station wagon depicted in one photograph had a "For Sale" sign in its window.

With respect to respondents' contention that the ordinance was enforced discriminatorily, the evidence showed that other antique dealers on Main Street displayed goods in their yards and even on sidewalks; but it was clear that none did so in as pervasive a manner as did respondents. Whereas the other owners only displayed goods during the day on weekends, the respondents kept merchandise in their yard on a continuous basis. The record thus reveals that the respondents have failed to carry the heavy burden which the law places upon them to show that "a pattern of discrimination has been consciously · practiced" against them "and that the law has been administered 'with an evil eye and an unequal hand'". *(People v Goodman,* 31 NY2d 262, 269; see *Yick Wo v Hopkins,* 118 US 356, 373–374; *People v Friedman,* 302 NY 75, 81; *People v Utica Daw's Drug Co.,* 16 AD2d 12.)

On the subject of whether the setback provisions of the ordinance are constitutional, it must first be noted that zoning is a legislative enactment and is entitled to the strongest possible presumption of validity *(Rodgers v Village of Tarrytown,* 302 NY 115; *Shepard v Village of Skaneateles,* 300 NY 115). Further, if the validity of a zoning ordinance is fairly debatable, the judgment of the legislative body which enacted it must prevail *(Euclid v Ambler Co.,* 272 US 365, 388; *Thomas v Town of Bedford,* 29 Misc 2d 861, affd 15 AD2d 573, affd 11 NY2d 428). Of course, the zoning power may not be exercised unreasonably or arbitrarily *(People v Goodman,* 31 NY2d 262, 266, *supra; Vernon Park Realty v City of Mount Vernon,* 307 NY 493, 498–499; *Cowan v City of Buffalo,* 247 App Div 591, 593).

The village presented evidence which showed that the set-

back prohibitions were intended to prevent vandalism, fire and traffic hazards as well as to preserve the appearance of the community. These are areas that a municipality may properly regulate under its police power in order to promote the general health, welfare and safety of the community (Village Law, § 7-704; see *People v Goodman,* 31 NY2d 262, 265, *supra; Matter of Cromwell v Ferrier,* 19 NY2d 263; *People v Stover,* 12 NY2d 462; *Town of Islip v Summers Coal & Lbr. Co.,* 257 NY 167; *Matter of Wulfsohn v Burden,* 241 NY 288, 297–298, 301). Respondents, however, contend that the setback provision which establishes yard areas is arbitrary since it includes uncovered porches as part of the yard but excludes covered porches from the definition of that term. Much of the merchandise located outside of respondents' premises was situated on an uncovered porch.

Testimony by village officials was that the village considers uncovered porches as more a part of a yard than a part of a building since these are generally nothing more than a concrete foundation that does not rise in height from the level of the ground. Covered porches, on the other hand, it regards as structures in themselves since they are attached to a building at a point well above ground level and actually serve to extend the sheltered perimeter of the structure beyond its original boundaries. The village zoning ordinance recognizes such a distinction by considering covered porches to be a part of a building for purposes of setback requirements while uncovered porches are not so considered (Zoning Ordinance of the Village of Fairport, § 55-4). Furthermore, the village showed that covered porches, by their very nature, block the view of traffic and contribute to a fire hazard. It reasons that these hazards would not be substantially increased by permitting their use for storage. Uncovered porches, on the other hand, do not present such inherent hazards but would, if permitted to become cluttered with large objects.

We think that the distinctions drawn by the village zoning ordinance between covered and uncovered porches are reasonable and their relation to the health, welfare and safety of the community is at least fairly debatable. Therefore, the judgment of the legislative body which enacted the ordinance should prevail (see *Euclid v Ambler Co.,* 272 US 365, *supra; Vernon Park Realty v City of Mount Vernon,* 307 NY 493, *supra; Thomas v Town of Bedford,* 29 Misc 2d 861, affd 15 AD2d 573, affd 11 NY2d 428, *supra).*

In order to determine whether the zoning provision which disallows residential uses in M-1 industrial zones is constitutional, it is necessary first to discuss the concepts of cumulative zoning and exclusive or, as it is commonly called, noncumulative zoning. The earliest zoning ordinances were cumulative in nature and were based upon the premise that single-family dwellings were the highest use of land. These ordinances established as the preferred zone, a single-family residential district. Excluded were other incompatible uses. Less preferred uses, such as commercial or industrial, were permitted in successively lower zones. However, since only the higher use was deemed worthy of protection from the lower use, the higher uses were always permitted in lower zones (1 Anderson, New York Zoning Law and Practice [2d ed], § 8.07). Cumulative zoning ordinances fell from favor with municipal planners when it became clear that lower uses, such as industrial, also required protection from higher uses such as residential, if zoning legislation was to be effective. For instance, homes in an industrial area may limit expansion of industry and interfere with normal industrial activity. Various governments found that it was substantially easier to protect citizens, especially children, from health and safety hazards if they did not live in close proximity to industry (1 Anderson, New York Zoning Law and Practice [2d ed], § 8.08). Thus, zoning ordinances which were noncumulative in nature began to replace the older cumulative statutes.

Although authority for the validity of noncumulative zoning ordinances is not found in New York appellate case law, courts of other jurisdictions and at least one New York court have dealt with this problem and have found such ordinances to be valid *(People ex rel. Skokie Town House Bldrs. v Village of Morton Grove,* 16 Ill 2d 183; *State ex rel. Berndt v Iten,* 259 Minn 77; *Kozesnik v Township of Montgomery,* 24 NJ 154; *Gruber v Mayor and Township Comm. of Township of Raritan,* 73 NJ Super 120; *People v O'Donnell,* 61 Misc 2d 194, 196).

We agree that noncumulative ordinances are valid exercises of the police power. However, the strictures of reasonableness which apply to all zoning are particularly applicable to noncumulative legislation. The Supreme Court of Illinois recognized this in *People ex rel. Skokie Town House Bldrs. v Village of Morton Grove (supra).* It stated *(supra,* pp 189–190): "Caution will have to be used in the application of noncumulative

ordinances because of the existing admixture of residential, commercial and industrial uses. The present character of a district may make an ordinance unreasonable and discriminatory". New Jersey and Minnesota courts have also reached the conclusion that the exclusion of residential uses from industrial zones must be measured by its reasonableness under the circumstances *(Kozesnik v Township of Montgomery,* 24 NJ 154, *supra; Gruber v Mayor and Township Comm. of Township of Raritan,* 73 NJ Super 120, *supra; State ex rel Berndt v Iten,* 259 Minn 77, *supra).* Additionally, section 7-704 of the New York Village Law requires zoning legislation to be "made with reasonable consideration, among other things, as to the character of the district" *(Vernon Park Realty v City of Mount Vernon,* 307 NY 493, 499, *supra;* see, also, *Matter of Otto v Steinhilber,* 282 NY 71, 75; *Town of Cortlandt v McNally,* 282 App Div 1072, 1073).

The uncontroverted evidence shows that the major portion of the M-1 zone in which respondents' land is located is predominantly residential. Furthermore, the Fairport ordinance permits parks and playgrounds in the zone (Zoning Ordinance of Village of Fairport, §§ 55-30[A] and 55-29[7]). This is persuasive evidence that the village envisioned the presence of children in the area. These factors are inconsistent with the exclusive use of the district for industrial purposes (see *People ex rel. Skokie Town House Bldrs. v Village of Morton Grove,* 16 Ill 2d 183, *supra).* We find, therefore, that the character of the M-1 zone is residential and, as a result, conclude that the zoning ordinance is unreasonable and void so far as it prohibits these uses *(People v Goodman,* 31 NY2d 262, 266, *supra; Vernon Park Realty v City of Mount Vernon,* 307 NY 493, 498–499, *supra; Cowan v City of Buffalo,* 247 App Div 591, 593, *supra).*

Accordingly, the judgment should be affirmed so far as it enjoins respondents from displaying merchandise for sale within the setback lines and reversed so far as it enjoins them from a residential use of their property.

CARDAMONE, SIMONS, GOLDMAN and DEL VECCHIO, JJ., concur.

Judgment insofar as it enjoins respondents from residential use of their property unanimously reversed on the law, and otherwise judgment affirmed, without costs.