In the Matter of JOHN ROGINSKI, Petitioner, v HENRY W. ROSE, as Chairman of the Zoning Board of Appeals of the Town of Hempstead, et al., Respondents. — Proceeding pursuant to CPLR article 78 to review a determination of the Zoning Board of Appeals of the Town of Hempstead, dated May 13, 1982, which, after a hearing, denied petitioner's application for a special exception permit to use his property for the precision machining of small parts. Determination confirmed and proceeding dismissed on the merits, without costs or disbursements. There was a rational basis for and substantial evidence in the record to support the determination of the Zoning Board of Appeals of the Town of Hempstead that the proposed use did not comply with the standards in the ordinance that govern the granting of special exception permits. A special use permit may be granted only upon the prior approval of the board of appeals (see Town of Hempstead Building Zone Ordinance, art 7, §§ X-1.0, X-1.14). Such approval is subject to a determination by the board of appeals: "1. That the use will not prevent the orderly and reasonable use of adjacent properties or of properties in adjacent use districts; 2. That the use will not prevent the orderly and reasonable use of permitted or legally established uses in the district wherein the proposed use is to be located or of permitted or legally established uses in adjacent use districts; 3. That the safety, the health, the welfare, the comfort, the convenience or the order of the Town will not be adversely affected by the proposed use and its location; and 4. That the use will be in harmony with and promote the general purposes and intent of this ordinance" (Town of Hempstead Building Zone Ordinance, art 12, § Z-1.0, subd B, par [a]). Entitlement to a special exception permit is not a matter of right (*Matter of Lemir Realty Corp. v Larkin,* 11 NY2d 20, 24) and compliance with ordinance standards must be shown before a special exception permit can be granted (see *Matter of Tandem Holding Corp. v Board of Zoning Appeals,* 43 NY2d 801, 802; *Matter of Cappadoro Land Dev. Corp. v Amelkin,* 78 AD2d 696, app dsmd 54 NY2d 833). In making such a determination, the ordinance requires that the board of appeals shall give consideration, *inter alia,* as to whether the use may give off obnoxious odors or cause disturbing emissions of vibration or noise (see art 12, § Z-1.0, subd B, par [b], cls 5, 6). At the hearing, in addition to other testimony, nearby residents testified that disturbing odors and noises were being emitted from petitioner's premises. We cannot say that the board's determination, that petitioner's proposed use did not comply with the ordinance in view of the proximity of the use to residences and the emission of obnoxious odors, vibration and noise, is without a rational basis and is not supported by substantial evidence (see *Matter of Ferman v Board of Appeals,* 69 AD2d 882). Mollen, P. J., Brown and Rubin, JJ., concur.

Weinstein, J., dissents and votes to grant the petition to the extent of annulling the determination and remitting the matter to the board of zoning appeals for further proceedings, with the following memorandum: Petitioner owns a parcel of land approximately 44 feet wide and 91 feet deep which is located within the Town of Hempstead in a strip zoned as a business district. The parcel, which is improved with a one-story cinder block and brick building, abuts a residential "B" district improved with one-family dwellings. On or about November 12, 1981, petitioner applied to the Department of Buildings of

the Town of Hempstead for a permit to use his premises for the precision machining of small parts. Said application was disapproved on the ground that the proposed use constituted a nonpermitted use within the meaning of section X-1.0 of article 7 of the town building ordinance. Pursuant to said section, the following uses are permitted as of right in the business zone: "SEC. X-1.2. Club, Fraternity House or Lodge. SEC. X-1.3. (Repealed May 4, 1954). SEC. X-1.4. (a) Public School, parochial school, private school for instruction of elementary grades, academic grades or both, chartered by the Board of Regents of the State of New York, college, university. (b) Religious Use. (c) Philanthropic use, excluding a correctional institution. (d) Hospital, sanitarium, dormitory of an educational institution. (e) Music school or dancing school. SEC. X-1.5. Agriculture, Green House, Nursery, Municipal Recreational Use, Railway Passenger Station. SEC. X-1.6. Office, Bank, Financial Institution and Telephone Exchange. SEC. X-1.7. Store for the sale at retail of articles to be used or consumed off the premises, which is not subject to the provisions of Section X-1.14 hereof. SEC. X-1.8. Restaurant other than a diner, lunch wagon, drive-in restaurant, drive-in luncheonette, drive-in counter or drive-in refreshment stand. SEC. X-1.9. When approved as a special exception by the Town Board, public garage, minor garage, battery service station, tire service station or a combination thereof, motor vehicle repair shop whether or not operated in connection with new or used motor vehicle sales, boat repair shop, whether or not operated in connection with new or used boat sales, public utility buildings and structure. [eff. 8/4/75] SEC. X-1.10. Carpenter, Hand Cabinet-Making, Furniture Repair or Upholstery Shop, Electrical Shop, Hand Metal Working, Blacksmith, Tinsmith, New and Unused Plumbing, Pet Shop, Gas, Steam or Hot Water Fitting Shop. SEC. X-1.11. Hand Laundry, Custom Tailoring, Hand Dressmaking, Shoemaking and Repairing. SEC. X-1.12. Sale or repair of jewelry, watches, clocks, or optical goods, musical, professional or scientific instruments. SEC. X-1.13. Undertaking and embalming. SEC. X-1.14. SPECIAL USES: Special Uses when approved by the Board of Appeals pursuant to Article 12, Section Z-5.0." Petitioner appealed the building department's negative determination to the zoning board of appeals on the ground that the requested use was one allowable under the provisions of section Z-5.0 (subd c, par 15) of article 12 of the ordinance which grant authority to respondents to approve a special exception for "[a]ny use of the same general character as any of the uses expressly permitted in a business district by this Ordinance". Petitioner contended, in essence, that the use requested is similar in nature to the occupations enumerated in the ordinance as "Hand Metal Working", "Blacksmith", "Tinsmith", and "Carpenter". A public hearing was held before the appeals board on February 24, 1982. In a decision dated May 13, 1982, the board denied petitioner's application for the special exception permit, stating in pertinent part: "The Board finds that the proposed operation is not a permitted use in a Business district. The Board finds that applicant is actually engaged in a manufacturing business, the creation and fabricating of multiple products out of sheet metal, be they metal containers, aircraft parts or otherwise. The Board finds that the proposed use is not of the same general character as a tinsmith, handmetal worker, carpenter or blacksmith, who did not have a multiple machine, production line as is the subject use. Furthermore, if we were to extend applicant's contention to his logical conclusion, any factory producing metal or wood products would be entitled to 'special exception' consideration. Thus an automobile assembly plant would not be a prohibited use in a Business district. This Board therefore finds the proposed use not permitted in a Business district. Since there has been no evidence of 'unnecessary hardship' the application must be Denied * * * Although the Board has found that the proposed use is not entitled to 'special exception' consideration,

the Board will nonetheless comment on the standards of the Ordinance as referrable to the use. The Board finds that North Jerusalem Rd. is zoned Business in the ribbon pattern and abuts a Res. 'B' district improved with one-family dwellings. In view of the proximity of the use to residences the consideration of obnoxious gases, odors, smoke and noise becomes a major importance. Applicant's witness testified that there is an odor, but that it is not objectionable. Despite that opinion, several witnesses felt differently. There was testimony of an awful odor and large amounts of smoke being emitted from applicant's chimney. There was also testimony of noise, low bellowing sounds, high pitched squeals and the sound of machines. This Board finds that the noises complained of are consistent with the machinery working with metal. Stone wheels are an abrasive and the sound of those wheels grinding metal will be loud and disturbing. Similarly the drilling and cutting of metal and the sanding machine can cause loud and disturbing noises as the witnesses testified. Also of interest is applicant's testimony that windows and doors are closed at all times, in the summer as well, that there is no need for air conditioning because the ceiling is insulated and there is leakage for air circulation. The Board finds it very difficult to believe that a sealed building depending on leakage can be a suitable work place. The Board finds that the structure has apparently been unable to contain the noise. The Board finds that it is very unlikely that the premises will be limited to one occupant for evermore. The Board finds that in the natural scheme of things, the business will expand and there will be additional employees. The Board finds that the premises are not sufficient, adequate or appropriate for the use and the reasonable anticipated operation and expansion thereof. The Board finds that the use or [sic] materials incidental thereto, or produced give off obnoxious gases, odors and smoke. The Board finds that the use causes a disturbing emission of vibration and noise. The Board determines: 1. That the proposed use will prevent the orderly and reasonable use of adjacent properties or of properties in adjacent use districts; 2. That the proposed use will prevent the orderly and reasonable use of permitted or legally established uses in the district wherein the proposed use is to be located or of permitted or legally established uses in adjacent use districts; 3. That the safety, the health, the welfare, the comfort, the convenience or the order of the Town will be adversely affected by the proposed use and its location; and 4. That the proposed use will not be in harmony with nor promote the general purposes and intent of this Ordinance." Petitioner thereupon commenced the instant CPLR article 78 proceeding seeking to review the board's determination. The matter was transferred to this court pursuant to CPLR 7804 by order of the Supreme Court, Nassau County (Young, J.). It is well settled that entitlement to special exceptions is not a matter of right. Nor must requests for special exceptions be routinely granted subject merely to the imposition of reasonable conditions (*Matter of Tandem Holding Corp. v Board of Zoning Appeals,* 43 NY2d 801, 802; *Matter of Lemir Realty Corp. v Larkin,* 11 NY2d 20, 24). Moreover, the decision of the zoning board of appeals is presumptively correct (*Matter of Joyce v Dobson,* 255 App Div 348, 350). Accordingly, its determination must be upheld if supported by substantial evidence, which is defined as "proof within the whole record of such quality and quantity as to generate conviction in and persuade a fair and detached fact finder that, from that proof as a premise, a conclusion or ultimate fact may be extracted reasonably — probatively and logically" (*300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176, 181). The board stated, in conclusory fashion, that petitioner's "proposed operation is not a permitted use in a Business district" insofar as it "is not of the same general character as a tinsmith, handmetal worker, carpenter or blacksmith, who did not have a multiple machine

production line as is the subject use". Nor did the board regard the proposed use as entitled to "special exception" consideration. In my view, this determination is not supported by substantial evidence and must accordingly be annulled. John Glaz, petitioner's partner in the metalworking business, testified at the hearing that there are seven machines in the shop, the most powerful of which has a one horsepower engine. Only one machine is utilized at a given time, however. He stated that his work was similar in part to that of a blacksmith, tinsmith and carpenter. In view of this uncontroverted testimony, the board's characterization of petitioner's use as "a manufacturing business" with "a multiple machine production line" and its analogizing it to an automobile assembly plant is totally unwarranted. It bears noting that petitioner's property lies entirely within a business district, for which the relevant zoning ordinance manifests an intention to permit a wide array of uses appropriate to a business section. The evidence on the record was a patently insufficient basis upon which a fair and detached fact finder could have concluded that petitioner's use constituted manufacturing in a sense different from the work of a blacksmith, tinsmith or carpenter, all of which constitute permitted uses (see *300 Gramatan Ave. Assoc. v State Div. of Human Rights, supra*). The fact that petitioner may ply his trade in a more sophisticated or up-to-date manner than any of the afore-mentioned tradesmen in no way alters the character of the use. The question for our determination thus becomes whether the proposed use is entitled to special exception consideration. The law is clear that a zoning board of appeals has no authority to issue a special exception permit unless the application therefor complies with standards of the zoning ordinance (*Matter of Wen & Liz Realty Corp. v Board of Zoning Appeals,* 94 AD2d 182; *Matter of Tandem Holding Corp. v Board of Zoning Appeals,* 43 NY2d 801, *supra; Matter of Cappadoro Land Dev. Corp. v Amelkin,* 78 AD2d 696, app dsmd 54 NY2d 833). The applicant bears the burden of proving that the proposed use is one which is contemplated by the ordinance subject only to conditions attached to its use to minimize its impact on the surrounding area (*Matter of North Shore Steak House v Board of Appeals,* 30 NY2d 238, 244; *Matter of Durante v Town of New Paltz Zoning Bd. of Appeals,* 90 AD2d 866, 867; *Brick Hill Constr. Corp. v Zoning Bd. of Appeals,* 74 AD2d 810, 811, affd 53 NY2d 621). Section Z-1.0 of article 12 of the subject ordinance provides, in pertinent part: "B. SPECIAL POWERS AND RULES. (MATTERS OF ORIGINAL JURISDICTION AND BY APPLICATION TO THE BOARD OF APPEALS.) Whenever a use, or the location thereof, is permitted only if the Board of Appeals shall approve thereof, the Board of Appeals may, in a specific case and after notice and public hearing, authorize such permissive use and its location within the district in which this Ordinance specifies the permissive use may be located, subject, however, to the following: (a) Before such approval shall be given, the Board of Appeals shall determine: 1. That the use will not prevent the orderly and reasonable use of adjacent properties or of properties in adjacent use districts; 2. that the use will not prevent the orderly and reasonable use of permitted or legally established uses in the district wherein the proposed use is to be located or of permitted or legally established uses in adjacent use districts; 3. that the safety, the health, the welfare, the comfort, the convenience or the order of the town will not be adversely affected by the proposed use and its location; and 4. that the use will be in harmony with and promote the general purposes and intent of this ordinance. (b) In making such determination, the Board of Appeals shall also give consideration, among other things to: 1. the character of the existing and probable development of uses in the district and the peculiar suitability of such district for the location of any of such permissive uses; 2. the conservation of property values and the encouragement of the most appropriate uses of land * * * 5. whether the use, or

materials incidental thereto, or produced thereby, may give off obnoxious gases, odors, smoke or soot; 6. whether the use will cause disturbing emission of electrical discharges, dust, light, vibration or noise." As per testimony of petitioner's business partner, John Glaz, the machine shop was essentially a one-man operation with hours from 9:00 A.M. to 5:00 P.M. On rare occasions, the shop would remain open until 9:00 P.M., but never beyond that hour. The shop was open from Monday to Saturday. Glaz stated that he generally made his own deliveries and that he received truck deliveries only once a month or every.other month. He testified that his equipment did not emit dust or make any noises which could be heard outside the building. The doors of the shop as well as the windows remained closed year around. Although the building was not air conditioned, it had been constructed in such a manner that the ceiling was insulated to prevent the transfer of heat into the building. When petitioner and Glaz bought the subject premises, it was being utilized as a facility to repair dry cleaning equipment. Upon further questioning, Glaz admitted that his machines make a humming noise while in operation but that such noise is not objectionable. He claimed that there were no emissions or odors arising from the work conducted in his shop. Glaz conceded that while there was a distinctive odor inside the building, it was unobjectionable. He also admitted that a small amount of smoke was discharged from some of the machines but stated that each machine had a filter to absorb smoke and odors. In further support of his case, petitioner introduced the following testimony from one Bert Nelson, his outside consultant: "Q. Mr. Nelson, in your opinion, would the granting of this application have any adverse effect upon the surrounding property, either in the Business or nearby Residential? A. It is my opinion that if there are no odors coming out of this building and if there are no smells coming out of this building, that the operation along North Jerusalem Road is one that would not interfere or adversely effect any use either in the Residential, which is abutting on the north, along North Jerusalem Road. It is a masonry building. I have been to the premises on at least three different occasions, two of which was while the applicant was in possession and running the machines. When I stood on the sidewalk I did not hear the machines operating inside — and that is not to say that somebody else will say that they did hear it — but if these premises were employed so that there was no noise emanating from it — there are uses along North Jerusalem Road, in my opinion, which are substantially more onerous than that which the applicant does. If there are no smells or odors coming out of it — which can be governed and put into operation so that there would not be any — it is my opinion that this use would not be known by anyone passing in front of the premises. And, in fact, if they were protected to that extent and if the residential in the rear did not either hear the noise or smell any of the odors — and that is not to say that there are any that do come out of it — but, then, it is in my opinion that the use on the said premises would interfere with no one's right of use or enjoyment of their property. Q. Would the impact of the requested use be any different than the uses that are allowed as a matter of right under the Zoning Ordinance, such as a carpentry shop, a cabinet-making shop, a hand-metal shop, a blacksmith or a tinsmith? A. I think it would be substantially less onerous than that which is permitted by the Special Exception Rule." In opposition to petitioner's application, objections were raised concerning the odors, noise, health hazards, and property depreciation which would allegedly result from the proposed use at the subject location. The sole testimony offered in opposition consisted of the statements of five neighbors who either own or rent property adjoining petitioner's site. The prevalent complaint expressed by the residents was that petitioner had commenced his operation without applying for the appropriate permits and would continue to expand his operation

without abiding by the provisions of the ordinance. The owner of the property on both sides of petitioner's conceded that he was attempting to purchase the subject property at the time petitioner bought it. He further noted that he would object to virtually any use of the property other than a retail store. Moreover, although several oral complaints concerning petitioner's use were made, there is no record of any letters of complaint having been written to the building department. It is firmly established that "where there is room for choice, neither the weight which might be accorded nor the choice which might be made by a court are germane upon an analysis for the presence of substantial evidence" (*300 Gramatan Ave. Assoc. v State Div. of Human Rights, supra,* p 180). While an administrative body enjoys wide latitude in weighing the evidence presented by each side, this is clearly not a situation where the board chose to afford greater reliance to the testimony of one side than to the evidence offered in opposition (see *Matter of Fitzpatrick v Board of Educ.,* 96 AD2d 557). At issue herein is not the propriety of the board's choice in the face of conflicting evidence. Rather, the issue is the more fundamental one of whether there exists sufficient evidence on record for the respondent board to have rendered a determination. I conclude that there is not. The sole evidence in support of the board's determination consists of the testimony of neighboring users. It has been held that the comments of neighboring residents, however emotionally tinged, taken in conjunction with the personal knowledge and familiarity which board members themselves have of a projected site, may suffice to support a conclusion that the proposed use would have an adverse impact on neighboring properties (*Brick Hill Constr. Corp. v Zoning Bd. of Appeals,* 74 AD2d 810, 811, affd 53 NY2d 621, *supra*). Although an independent inspection is not a *sine qua non* to a determination of a board of zoning appeals, boards may, and frequently do, act upon their own knowledge of conditions and/or personal inspection (*Matter of Community Synagogue v Bates,* 1 NY2d 445, 454). At bar, the board members indicated no personal familiarity with the subject site. Furthermore, not only did the board fail to make its own independent investigation of the premises pursuant to petitioner's request, but it apparently ignored the offer of petitioner's counsel to do whatever is necessary to render the premises totally odorless and noiseless from the outside, including air conditioning and further insulation. The board chose to reject petitioner's application outright, notwithstanding the fact that it has the power to impose such authentically reasonable conditions upon the issuance of a permit as would minimize any undesirable effects which the new development might have on the surrounding community (*Matter of North Shore Steak House v Board of Appeals,* 30 NY2d 238, 246, *supra*). It is apparent from the record, despite the reasons assigned by the board, the petitioner's application was denied not solely due to an objection peculiar to the proposed use but due to general community pressure directed against the allowance of additional manufacturing operations in this business zone (see *Matter of Pleasant Val. Home Constr. v Van Wagner,* 41 NY2d 1028, 1029). Denial due solely to a general objection to a special use would be arbitrary and impermissible (*Matter of Durante v Town of New Paltz Zoning Bd. of Appeals,* 90 AD2d 866, 867, *supra*). In view of the insufficiency of the evidence, the determination under review should be annulled and the matter remitted to the respondent board for a new hearing and determination.

