OPINION OF THE COURT
Alfred M. Lama, J.
Petitioners Leo Bekermus and Nedato, Inc., seek a judgment pursuant to CPLR article 78 annulling and setting aside the determination by the respondent Board of Zoning Appeals of the Town of Southampton which denied the petitioners’ application for a special exception permit to convert an existing restaurant and motel units into residential condominium dwelling units. Petitioners contend that the action by the respondents was illegal, unconstitutional, arbitrary, capricious, discriminatory, an abuse of *379 discretion, affected by error of law and not supported by substantial evidence.
Petitioner Nedato, Inc., is the present owner of the real property which is the subject of this proceeding. Petitioner Leo Bekermus is a contract vendee under a certain contract to purchase the property from Nedato, Inc.
The subject parcel is located at the water’s edge of Moriches Bay at the end of Tanners Neck Lane, in the Town of Southampton, State of New York. In its present condition the property consists of a restaurant or “Bar-disco”, eight motel units and one additional rental unit. With the exception of the subject property the immediate surrounding area is completely residential and is now zoned R-20 residential. Petitioner seeks to change his property from a restaurant-motel to 10 condominiums or cooperatives with a pool and tennis court.
Under section 69-E of the Code of the Town of Southampton the conversion of a motel situated in an R-20 zoning district into residential condominiums or cooperatives is permitted provided the applicant meets the general standards for a special exemption use under section 69-23 of the Code of the Town of Southampton and the special conditions under section 69-24 of the same code. (The court notes that recently section 69-24 and sister sections of the Code of the Town of Southampton, all having to do with condominium and cooperative conversion were deemed a valid exercise of the power of the town [Catham Realty Corp. v Town of Southampton, 97 AD2d 531].)
Three separate hearings were held by the Board on this application. However, from the outset, the respondent Board focused on two aspects of the present use of the property, one, whether so much of the property constituting the restaurant was still in use at the time of the application, and, two, whether “the subject parcel lawfully existed for use as a multiple dwelling, resort motel or transient motel as of the effective date of the amendment to the Code” (see Code of Town of Southampton, § 69-24 GG [3]).
With respect to the latter question of the legality of the motel in the R-20 residential district, the record reveals the following: the original parcel predating the enactment *380 of the original Code of the Town of Southampton in 1957 consisted of a restaurant, bar and rental unit. When the town code came into effect in 1957 the subject property was zoned B-residential (this code remained in effect until 1972), and thus the restaurant, bar and rental unit constituted a pre-existing, nonconforming use under the code.
On three occasions, in 1961, 1962 and 1963 the then owners of the property applied to the Southampton Board of Zoning Appeals seeking variances.
The first application, in May, 1961, was an application by Mr. John Ostheimer for a variance to construct a two-story motel building, containing 24 rental units, and for permission to expand the existing nonconforming use to more than double the size of the building or structure actually devoted to such use as of the effective date of the ordinance. This variance application was denied on the basis of paragraph 4 of article XXII of the original code. That section of the code permitted a nonconforming use to be changed to the use of the same or higher classification, but did not allow the applicant to retain the existing nonconforming use while at the same time adding another nonconforming use.
In June, 1962, the identical owner again went before the Board with another variance application, this time for permission to erect a two-story hotel, allegedly as an expansion of the alleged pre-existing use of the public bar, restaurant and rental unit. This application was denied on the basis that it appeared to more than double the size of the building that was devoted to the use of the restaurant in 1957.
Subsequent to the second application the subject property was conveyed to Mr. Don Morrow, and, in 1963, the new owner applied to the Board of Appeals for a front yard setback and an increase in size of the restaurant, though the requested change apparently did not double the size of the restaurant. This application was granted.
The town archives revealed no further change in the nature of the property until early 1969. At that time, Mr. Don Morrow applied for a building permit for the addition of a restaurant and eight motel units. On January 10, 1969, the permit was approved by both the deputy zoning *381 inspector and the building inspector. Some 10 months later after the work was completed in accordance with the building permit, a certificate of occupancy for a restaurant and motel was issued to Mr. Morrow. Some time thereafter, Mr. Morrow sold the property to Nedato, Inc., the present owner of the premises.
The Board questioned to a great extent the issuance of both the building permit and the certificate of occupancy to Mr. Morrow. The Board stated that it believed that to obtain a building permit to construct the addition of eight motel units, a variance would have had to have been obtained by Mr. Morrow. Since the Board could find no record of a variance it reasoned that the issuance of the building permit and subsequent certificate of occupancy may have been improper.
With respect to the use constituting the restaurant, the attorney for the petitioner stated that he believed the nonconforming restaurant-bar use was still being utilized as such up until the present time. There was also some testimony from the present lessee who indicated that he no longer operated the restaurant-bar, but now only operated a bar-disco utilizing the restaurant area.
Other than the above, there is no doubt from a review of the record that the petitioners met all the general and special exception requirements under the Code of the Town of Southampton to convert the property into residential condominiums or cooperatives.
On August 19, 1982, the Southampton Board of Zoning Appeals unanimously voted to deny the petitioners’ application. In so doing, the Board determined that the use of the premises as a motel and restaurant was illegal because the certificate of occupancy issued in 1969 was null and void and based upon an illegal building permit. The Board also found that the pre-existing use of the premises as a restaurant had been abandoned and the current use of the premises as a bar-disco was in violation of the town code enjoying no pre-existing rights. Therefore, finding that there were no legal nonconforming pre-existing rights associated with the property the Board denied the application.
*382 Thereafter, petitioners commenced this CPLR article 78 proceeding. Petitioners assert that the respondent lacked the power, authority and jurisdiction to determine that the certificate of occupancy for the motel and restaurant was null and void, and that based upon the pertinent provisions of the Executive Law of the State of New York the Board was bound by the certificate of occupancy. Furthermore, petitioners claim that due to the fact that some 13 plus years have gone by without any violation of a zoning ordinance being asserted against the subject property, the respondent municipality is barred under the doctrines of zoning estoppel and laches from enforcing such alleged violations now especially against a subsequent bona fide purchaser such as Nedato, Inc. Finally petitioners maintain that the finding by the Board that the restaurant use had been abandoned was not supported by substantial evidence.
The respondents contend that the Board was correct in its findings and determination. The respondents assert that the Board could properly declare the building permit and certificate of occupancy null and void because the Board had a legitimate right and duty to inquire as to the use of the land. Respondents contend that no doctrine of laches or estoppel can apply against the municipality. Finally respondents maintain that the Board was correct in finding the restaurant use had been abandoned.
The court finds that the determination by the Southampton Board of Zoning Appeals in declaring the certificate of occupancy “null and void” was wholly improper, arbitrary, and lacking in substantial evidence.
The Board of Zoning Appeals was without jurisdiction to declare a certificate of occupancy null and void. Under former article 18 of the Executive Law* (more commonly referred to as the State Building Code which the Town of Southampton adopted in 1963) the methods for issuance and vacating a certificate of occupancy were provided for in section 383. Therein the following is stated:
*383 “d. A certificate of occupancy for a building constructed in accordance with the provisions of the state building construction code shall certify that such building conforms to the requirements of the building regulations applicable to it. The certificate shall be in such form as the council may prescribe.
“Every such certificate of occupancy shall, unless and until set aside or vacated by the board of review or a court of competent jurisdiction, be and remain binding and conclusive upon all state and municipal agencies, as to all matters therein set forth and no order, direction or requirement at variance therewith shall be made or issued by any other state or municipal agency.”
Thus once the certificate of occupancy was issued by an ^officer of the Town of Southampton, the Town of Southampton was bound as to all matters set forth within that certificate of occupancy and “no order, direction or requirement at variance therewith” could be made by any municipal agency with respect to the validity of the certificate; and this included the Town of Southampton Board of Zoning Appeals. (Robitzek Investing Co. v Colonial Beacon Oil Co., 265 App Div 749.)
Against this holding, the Town of Southampton argues that the question of use of the land is always a proper concern of the municipality, and, therefore, if a building permit and subsequent certificate of occupancy were issued illegally and improperly then the Board had a right to declare the same invalid, in order to protect its townspeople from illegal uses.
The court agrees for the most part with the position advanced by the respondent. Use is a legitimate concern of municipal agencies such as a board of zoning appeals (see Town Law, §§ 261, 267), and there can be no question that zoning is an aspect of the police power of a municipality which can be used for the protection of the general welfare of its people, so long as it bears a substantial relation to the public safety, morals and general welfare. (Village of Euclid v Ambler Realty Co., 272 US 365; Ginsberg v Yeshiva of Far Rockaway, 45 AD2d 334.)
The Town of Southampton is also correct in stating that a building permit illegally issued carries with it no vested *384 rights (Reichenbach v Windward at Southampton, 80 Misc 2d 1031) and, when a certificate of occupancy is issued in connection with a new building for which a permit has been obtained it is subject to the infirmities of the building permit. Thus, if the building permit has been lawfully issued and is void then the subsequent certificate of occupancy pursuant to a void permit is similarly void and revocable. (Marcus v Village of Mamaroneck, 283 NY 325; Town of Greenburgh v Buser, 285 App Div 1090; Matter of S. B. Garage Corp. v Murdock, 185 Misc 55.) The court also opines that even though some 13 years have expired without even a trace of an alleged zoning violation lodged against the subject property by the municipality, no claim of laches or zoning estoppel could probably be sustained against the town were the subject certificate of occupancy-challenged on the basis of original invalidity in the correct forum. (B & G Constr. Corp. v Board of Appeals, 309 NY 730; Town of Greenburgh v Buser, supra; Reichenbach v Windward at Southampton, supra.)
The court only finds that in adopting the State Building Code in 1963 the Town of Southampton also adopted the exclusive remedies set forth in section 383 of the Executive Law to set aside a certificate of occupancy. Until such time as the certificate of occupancy is set aside by the proper authority it is binding and conclusive as to the legality of the use set forth therein. Therefore, when the applicants furnished proof to the Board in the form of a valid certificate of occupancy to operate the premises as a motel and restaurant this certified that what was done on the property in the past complied with the building and zoning ordinances of the town (Beneke v Board of Appeals, 51 Misc 2d 20). It further proved that the subject parcel lawfully existed for use as a multiple dwelling, resort motel or transient motel as of the effective date of the amendment to the code. (Code of Town of Southampton, § 69-24 GG; Matter of Edwards v Murdock, 283 NY 529.) It was not incumbent upon the petitioners to prove a negative — that the prior owner of the property did not violate the Code of the Town of Southampton, and that the issuance of the certificate of occupancy was not issued illegally. This was the burden of the town in another proceeding to set aside *385 the certificate of occupancy. To date they have not met this burden and their conclusions that the building permit and subsequently issued certificate of occupancy were fraudulently and illegally issued are at this point in time based upon conjecture, speculation and without basis in fact.
Turning to the finding that “the restaurant use was abandoned” the court also finds this determination to be improper and somewhat irrelevant. Even assuming that the present lessee’s testimony was to be believed in its entirety (and it is noted that he admitted he was interested in continuing to operate his bar-disco and acknowledged that the granting of petitioners’ application would destroy that possibility) the fact remains that the pre-existing use as a bar continued without cessation. At most this would only have constituted a slight deviation from the original restaurant-bar use to a similar type use. The distinction between the two uses, if one can be found at all, would not constitute abandonment. (Allen v Hattrick, 87 AD2d 575.)
The court also opines that insofar as the intent of the Southampton Town Ordinance is to eliminate nonconforming uses gradually (§ 69-3L [declaration and purpose]) and the proposed use is a legal use under the code, this application should have been encouraged rather than discouraged.
Based on the foregoing, the court finds that compliance with the general and specific standards under the ordinance was met by the applicants and accordingly the petitioners were entitled to their special exception permit. (Matter of Roginski v Rose, 97 AD2d 417.)
Therefore the court finds the determination of the respondent to have been arbitrary, capricious and not based on substantial evidence. The court directs the respondent to issue the special exception permit sought by the petitioners within 30 days from the date of the judgment to be submitted by petitioners.

 Article 18 of the Executive Law was repealed by L 1981, ch 707, § 12, effective Jan. 1, 1984. However, the repeal of article 18 did not impair the continued validity, after the effective date of such repeal (Jan. 1,1984) of any action taken prior to that date, as is the case here.